Argued and submitted January 13, decision of Court of Appeals affirmed in part and
reversed in part; judgment of circuit court affirmed December 24, 1992

Chrisetta Renese MOSLEY,
a Minor Child,
by her guardian ad litem
Lodie Marie Dunn,
*Respondent on Review,*

*v.*

PORTLAND SCHOOL DISTRICT NO. 1J,
*Petitioner on Review,*

Nathan JONES,
Wanda Griffin and Margaret Curtis,
*Defendants.*

(CC A8902-01148; CA A63421; SC S38378)

843 P2d 415

Gregory A. Chaimov, Portland, argued the cause and filed the petition for petitioner on review. With him on the petition were Jeffrey B. Millner and Miller, Nash, Wiener, Hager & Carlsen, Portland.

Robert P. Van Natta, St. Helens, argued the cause for respondent on review.

Kathryn Clarke, Portland, filed a brief for *amicus curiae* Oregon Trial Lawyers Association. With her on the brief was Dean Heiling, Portland.

Edward C. Harms, Jr., of Harms, Harold & Leahy, Springfield, filed a brief for *amicus curiae* Oregon School Boards Association.

GILLETTE, J.

## GILLETTE, J.

In this personal injury case, plaintiff brought an action against defendant school district for injuries sustained in a fight on school grounds during lunch period.[1] A jury returned a verdict in favor of defendant on the ground that defendant was not negligent. The trial court entered judgment for defendant. The Court of Appeals affirmed in part, reversed in part, and remanded the case for a new trial. *Mosley v. Portland School Dist. No. 1J*, 108 Or App 7, 813 P2d 71 (1991). We allowed review and now reinstate the judgment of the circuit court.

On November 13, 1987, plaintiff was a student at one of defendant's high schools in Portland. She was cut by a knife during a fight with another student at her high school during lunch period. Plaintiff brought this action against defendant, alleging that defendant was liable for her injuries because it was negligent in: (1) failing to exercise proper supervision of students; (2) failing to provide proper security and sufficient security personnel for protection of students when defendant knew that students carried weapons at the school; (3) failing to prevent weapons from being carried into the school building; and (4) failing to stop the attack before the knife was used. Defendant asserted, among other things, the affirmative defense of discretionary immunity under the Oregon Tort Claims Act. ORS 30.265(3)(c).[2]

At trial, defendant moved for a directed verdict under the immunity defense. The trial court denied the motion and instructed the jury on the immunity defense. As noted, the jury returned a verdict in favor of defendant that found that defendant had not been negligent in any respect claimed by plaintiff. The trial court entered judgment on the verdict.

---

[1] Plaintiff named three other defendants in this action. Only the school district is involved in this appeal.

[2] ORS 30.265(3)(c) provides:

"Every public body and its officers, employees and agents acting within the scope of their employment or duties * * * are immune from liability for:

"* * * * *

"(c) Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

Plaintiff appealed, arguing that the question of whether defendant is immune from liability under ORS 30.265(3)(c) is an issue of law for the court, not one of fact for the jury, and that the trial court therefore erred in submitting that issue to the jury. Defendant responded that, whether or not immunity is a jury question, defendant was immune in this case as a matter of law. The Court of Appeals held that, under ORS 30.265(3)(c), defendant was immune as a matter of law under plaintiff's second and third theories of negligence — that defendant failed to provide proper security and sufficient security personnel for the protection of students when defendant knew that students carried weapons at the school; and that defendant failed to prevent weapons from being carried into the school building. 108 Or App at 11. That court further held, however, that defendant was not immune from liability under plaintiff's first and fourth allegations — that defendant failed to exercise proper supervision of students; and that defendant failed to stop the attack before the knife was used — because "[t]hose decisions are 'routine decisions made by employees in the course of their day-to-day activities.' " *Ibid.* (citing *Lowrimore v. Dimmitt*, 310 Or 291, 296, 797 P2d 1027 (1990)). Consequently, the Court of Appeals reversed the judgment of the trial court and remanded the case. *Mosley v. Portland School Dist. No. 1J, supra.*

Although neither party has complained about it, we note that the Court of Appeals' disposition of the case on the grounds that the Court of Appeals identified is to some degree anomalous. The jury found that defendant was *not negligent.* The verdict form had no separate provision for a verdict based on immunity. Arguably, the verdict on negligence made any discussion of immunity irrelevant, because the jury did not need even to consider that doctrine to find defendant not liable — unless certain acts of defendant were found to be negligent, there was no need to decide if the same acts also were discretionary.

However, the Court of Appeals' decision to discuss immunity as a matter of law becomes understandable when one examines the parties' briefs in the Court of Appeals. Plaintiff assigned as error 11 different trial rulings. It was possible that, if one or more of those rulings was erroneous

and prejudicial, a new trial would be required. But defendant cross-assigned as error the trial court's refusal to rule that defendant was immune as a matter of law. If defendant's argument in this respect were correct, the alleged trial errors would be irrelevant. Hence, we suspect that the Court of Appeals chose to deal with the potentially dispositive question, immunity, first. But here is the anomaly: Although the Court of Appeals sustained defendant's claim of immunity *only in part*, it nevertheless remanded the case for retrial without discussing plaintiff's 11 assignments of error. Some or all of those assignments could have been relevant to the retrial and, even if all of them were irrelevant, the Court of Appeals should have said so. However, our disposition of the case makes it unnecessary for the Court of Appeals to consider plaintiff's assignments of error further.

The only question before us concerns plaintiff's theories of negligence as to which the Court of Appeals held that defendant was not immune — allegations one and four. (The Court of Appeals held that defendant was immune as a matter of law with respect to plaintiff's other theories, and she has not sought review of that holding.) The parties present the same arguments that they did before the Court of Appeals. With respect to plaintiff's remaining theories, we turn to a consideration of whether defendant is immune as a matter of law under the "discretionary function or duty" provision of ORS 30.265(3)(c) from liability for plaintiff's injuries.

Because the defense that defendant claims under ORS 30.265(3)(c) is statutory, we must determine the statute's meaning. To be immune under ORS 30.265(3)(c), the decision at issue must be "a policy judgment by a person or body with governmental discretion." *Little v. Wimmer*, 303 Or 580, 588, 739 P2d 564 (1987). The statute provides immunity "to decisions involving the making of policy, but not to routine decisions made by employees in the course of their day-to-day activities, even though the decision involves a choice among two or more courses of action." *Lowrimore v. Dimmitt, supra*, 310 Or at 296.

In *McBride v. Magnuson*, 282 Or 433, 436-37, 578 P2d 1259 (1978), this court generally described the type of decision that is "discretionary" for purposes of governmental immunity:

"[N]ot every exercise of judgment and choice is the exercise of discretion. It depends on the kind of judgments for which responsibility has been delegated to the particular officer. Discretion, as this court has noted in other contexts, involves 'room for policy judgment,' * * * or the responsibility for deciding 'the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued' * * *. It involves the delegated responsibility for 'assessment and ranking of the policy objectives explicit or implicit in the statute' and for the judgment that one or more of these objectives will be served by a given action * * *. In other words, insofar as an official action involves both the determination of facts and simple cause-and-effect relationships and also the assessment of costs and benefits, the evaluation of relative effectiveness and risks, and a choice among competing goals and priorities, an official has 'discretion' to the extent that he has been delegated responsibility for the latter kind of value judgment."

In *McBride*, the plaintiff had alleged that the defendant police officer " 'intentionally, maliciously and without probable cause, caused [her son] to be placed in protective custody' " by "making an investigation and report of burns suffered by the child." *Id.* at 435. This court held that the officer could not claim immunity under the facts alleged, essentially because the decision to make an investigation and report involved no more than "the determination of facts and simple cause-and-effect relationships." *Id.* at 437.

Following *McBride*, this court has applied the foregoing concept of "discretion" on numerous occasions. In *Brennen v. City of Eugene*, 285 Or 401, 591 P2d 719 (1979), this court held that a city employee's decision to license a taxicab company that did not have the requisite amount of liability insurance was not immune under ORS 30.265(3)(c). The court stated that, "[a]lthough the decision to issue the license, in the abstract, may or may not have required discretion, the only duty of the agent regarding the liability insurance was to compare the facts stated in the application with the requirements of the ordinance." *Id.* at 416. Thus, under the particular facts involved, the decision to issue a license did not involve any discretion at all.

In *Dizick v. Umpqua Community College*, 287 Or 303, 599 P2d 444 (1979), the plaintiff sought damages on the

ground that the defendant's employees had misrepresented the availability of materials and equipment related to some welding courses. This court noted that the representations themselves "did not allow 'room for policy judgment,' the responsibility of deciding 'the adaption of means to an end,' or the 'assessment and ranking of policy objectives explicit or implicit in the statute.' " *Id.* at 309 (quoting *McBride v. Magnuson, supra,* 282 Or at 437). Thus, discretionary immunity did not attach to the decision to make those representations.

*Stevenson v. State of Oregon,* 290 Or 3, 619 P2d 247 (1980), involved an allegation that highway division employees were negligent in failing to provide shields or make other changes near an intersection to correct a condition misleading to motorists. The state argued that it was immune, because the decisions at issue involved engineering judgment. This court conceded that this might be so, but held that the state had failed to provide any evidence that the responsible employees had "made any policy decision of the kind we have described as the exercise of governmental discretion." *Id.* at 16.

In *Fazzolari v. Portland School District No. 1J,* 303 Or 1, 734 P2d 1326 (1987), the plaintiff alleged that the school district was negligent in failing to provide security on school grounds at a time when the district knew that students would be on the grounds. Discretionary immunity under ORS 30.265(3) had not been argued to the Court of Appeals. Concerning the concept, this court nonetheless observed: "We think that a school principal's failure to take *any precautions whatever,* if that was unreasonable, is not an exercise of policy discretion, *see Miller v. Grants Pass Irrigation,* 297 Or 312, 686 P2d 324 (1984), though a school board's choice between expenditures on security personnel or other types of safeguards might be." *Id.* at 22 n 20 (emphasis supplied).

Finally, in *Lowrimore v. Dimmitt, supra,* this court held that a deputy sheriff's decision to pursue a vehicle driven by a criminal suspect was not immune, because "the decision itself [was] not a policy judgment." 310 Or at 296. Although the deputy's "decision to pursue may have been made *pursuant to* a county departmental policy," *ibid.* (emphasis supplied), that policy already was in place. The decision to pursue

was based on the deputy's specific knowledge of the facts involved.

From the foregoing cases, we derive the following set of principles that apply to the present case: A public body that owes a particular duty of care (such as that owed by a school district to its students who are required to be on school premises during school hours) has wide policy discretion in choosing the means by which to carry out that duty. *Little v. Wimmer, supra,* 303 Or at 589; *Fazzolari v. Portland School District No. 1J, supra,* 303 Or at 22 n 20; *Miller v. Grants Pass Irrigation, supra,* 297 Or at 320. The range of permissible choices does not, however, include the choice of not exercising care. *Fazzolari v. Portland School District No. 1J, supra.* Normally, a choice within the permissible range, in order to qualify for immunity, is one that has been made by a supervisor or policy-making body. *Lowrimore v. Dimmitt, supra,* 310 Or at 296; *Fazzolari v. Portland School District No. 1J, supra; McBride v. Magnuson, supra,* 282 Or at 436-37. On the other hand, the choice to follow or not to follow a predetermined policy in the face of a particular set of facts involving the safety of a particular individual normally is not a discretionary policy choice entitled to immunity under ORS 30.265(3)(c). *Lowrimore v. Dimmitt, supra.*

Under the foregoing principles, plaintiff's first allegation — that defendant failed to exercise proper supervision of students — concerns what is, on the face of it, a matter of discretion, *i.e.*, the location of security personnel to supervise the general student body at the school at any particular time. Thus, on its face, the first allegation should not have been submitted to the jury. Even if the first allegation were deemed sufficient on its face, the record here establishes that decisions as to the number and location of security personnel within plaintiff's high school were responsibilities entrusted by the school board and the superintendent to the school principal, who was the responsible policy-making official within the school. *See Little v. Wimmer, supra,* 303 Or at 587-88 (" 'Discretion, as this court has noted in other contexts, involves "room for policy judgment" or the responsibility for deciding "the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued." ' ") (quoting with approval

*McBride v. Magnuson, supra*, 282 Or at 437). The principal's decisions on the number and allocation of his security personnel were matters involving "room for policy judgment" and "the adaption of means to an end." Plaintiff agreed that the principal was no mere functionary. Instead, she faulted him for not allocating his security personnel differently and for not choosing to use an additional security system. Both of those choices, however, are classic policy choices that are entitled to discretionary immunity. *Fazzolari v. Portland School District No. 1J, supra; McBride v. Magnuson, supra.* The Court of Appeals erred in remanding the case to be retried on plaintiff's first allegation of negligence.

■■ Plaintiff's fourth allegation — that defendant was negligent in failing to stop the fight before the knife was used — is not as clearly a policy judgment as are the facts asserted in plaintiff's first allegation. Nonetheless, we hold that, on this record, defendant's actions were immune. Plaintiff's fourth allegation can be read in two ways: (1) Defendant failed to anticipate that there would be a fight between students at the particular location within the school where this fight occurred, and to allocate security personnel accordingly; or (2) having observed the fight, defendant did nothing to break it up before the other student stabbed plaintiff. The first possible reading is simply an alternative way of criticizing the principal's policy choice in the way in which he allocated security and supervisory personnel within the high school building; it therefore adds nothing to the first allegation of negligence. Under such a reading, the allegation was insufficient for the reasons already discussed in connection with plaintiff's first allegation. The second possible reading, however, alleges knowledge of a kind that would remove defendant from the scope of the immunity afforded by ORS 30.265(3)(c), *i.e.*, it alleges *specific* knowledge concerning the incident involved in this case that, if acted on in a timely manner, would have enabled defendant to protect plaintiff.

That possible second reading does not aid plaintiff here, however. The evidence at trial, viewed in the light most favorable to plaintiff, would not permit a jury to find that defendant had specific knowledge that the fight was occurring or would occur and that defendant then failed to intervene in a timely way. In other words, there is no evidence that

defendant acted negligently. Without such evidence, plaintiff could not prevail under her fourth allegation, even if it were read as extending to non-discretionary acts.[3]

Because plaintiff's claims and the record in this case related only to acts for which defendant either is immune from liability as a matter of law or as to which there was no evidence that defendant was negligent, we need not reach the issue whether the availability of the immunity defense under ORS 30.265(3)(c) may at times depend on factual questions that properly could be submitted to a jury. We hold that the trial court properly entered judgment in favor of defendant.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is affirmed.

---

[3] Our decision as to this allegation does not revive any of the assignments of error that the Court of Appeals did not address, because none of those assignments affected plaintiff's ability to present evidence on this issue at trial.